STATE of Iowa, Appellee,

v.

Joseph Nelson SPENCER, Jr., Appellant.

No: 92–1887.

Supreme Court of Iowa.

July 27, 1994.

Rehearing Denied Sept. 21, 1994.

Linda Del Gallo, State Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Chris Odell, Asst. Atty. Gen., Michael P. Jensen, County Atty., for appellee.

McGIVERIN, Chief Justice.

The question presented here is whether a criminal defendant suffered a violation of his sixth amendment right to self-representation when the district court appointed counsel for him over his objection. The court of appeals agreed with the trial court's ruling. We affirm.

I. *Background facts and proceedings.* On July 18, 1990, Monona county sheriff Dennis Smith went to Joseph Spencer's rural home to investigate complaints that Spencer was discharging firearms on his property. Sheriff Smith assumed Spencer was present because he noticed Spencer's vehicle parked there. When no one responded to Smith's knock on the front door, he walked to the edge of the house looking for another door. From that vantage point, Smith observed marijuana growing in Spencer's garden. Sheriff Smith then obtained a search warrant issued on the basis of those observations. Marijuana plants, cocaine, and several firearms were seized from Spencer's premises upon execution of the search warrant.

On August 20, trial informations were filed charging Spencer with possession of marijuana with intent to manufacture, unauthorized possession of firearms, possession of cocaine, and possession of marijuana in violation of Iowa Code sections 204.401(1)(b), 724.3, 204.-401(3), and 204.401(3) (1989), respectively.

Defendant Spencer retained a private attorney, Richard Mock of Onawa, to represent him and pleaded not guilty. Attorney Mock filed a motion to suppress drugs and weapons seized during the execution of the search warrant. After an evidentiary hearing, the district court overruled the motion.

A trial date was set. On May 17, 1991, a few days before trial, attorney Mock moved to withdraw from his representation of defendant Spencer. During the hearing on that motion, the question arose as to who would represent defendant at trial. Defendant Spencer told the court he wished to represent himself but admitted he did not know legal procedures or how to object to improper evidence. After a lengthy colloquy, the district court stated, "As far as I'm concerned, although he indicates he wants to do it himself, I don't see that he's competent and qualified to do it himself." The district court then appointed attorney Richard McCoy of Sioux City to represent Spencer.

The case was continued and went to trial about one year later. Attorney McCoy fully represented defendant prior to and during the trial. Spencer was found guilty by a jury and was sentenced on the four charges.

Spencer appealed, contending through new counsel that the district court denied his right to self-representation.

The court of appeals affirmed in a 2–1 decision. That court concluded that Spenc-

er's statements asserting a desire to proceed pro se "came out of frustration rather than a distinct and unequivocal request for that constitutional right." The court further held that even if Spencer did initially assert his right to self-representation, he waived that right by failing to reassert it before and during trial.

We granted Spencer's application for further review.

■ Because Spencer contends the deprivation of a constitutional right occurred, our review is de novo with respect to factual as well as legal determinations. *Armento v. Baughman,* 290 N.W.2d 11, 15 (Iowa 1980).

II. *Right to self-representation.* Spencer contends that the district court forced counsel upon him, contrary to his rights under the sixth amendment of the federal constitution. The court of appeals concluded that Spencer waived his sixth amendment right to self-representation, noting that he made his request out of frustration and later abandoned any further assertions of that right. We agree with the court of appeals.

■ The sixth amendment provides that an accused "shall enjoy the right ... to have the assistance of counsel for his defence." The fourteenth amendment of the federal constitution extends this right to state prosecutions. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975). In *Faretta,* the Supreme Court held that the right to self-representation to make one's own defense is necessarily implied by the structure of the sixth amendment. *Id.* at 819, 95 S.Ct. at 2533, 45 L.Ed.2d at 572. However, the Supreme Court also recognized an important limitation on that right: Although the defendant may elect to represent himself (usually to his detriment), the trial court "may—*even over objection by the accused*—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* at 834–35 n. 46, 95 S.Ct. at 2541 n. 46, 45 L.Ed.2d at 581 n. 46 (emphasis added); *accord McKaskle v. Wiggins,* 465 U.S. 168, 184, 104 S.Ct. 944, 954, 79 L.Ed.2d 122, 137

(1984). Such an appointment serves "to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *McKaskle,* 465 U.S. at 184, 104 S.Ct. at 954, 79 L.Ed.2d at 137. A case may be too complicated to allow self-representation. *Butler v. United States,* 317 F.2d 249, 258 (8th Cir.1963), *cert. denied,* 375 U.S. 836, 84 S.Ct. 67, 11 L.Ed.2d 65 (1963), and *cert. denied,* 375 U.S. 838, 84 S.Ct. 77, 11 L.Ed.2d 65 (1963).

■ Moreover, a defendant waives his right to self-representation unless he asserts that right by "knowingly and intelligently forgo[ing] his right to counsel." *McKaskle,* 465 U.S. at 173, 104 S.Ct. at 948, 79 L.Ed.2d at 130. This waiver may occur despite the defendant's statement that he wishes to represent himself if he makes that statement merely out of brief frustration with the trial court's decision regarding counsel and not as a clear and unequivocal assertion of his constitutional rights. *Reese v. State,* 391 N.W.2d 719, 724 (Iowa App.1986). *See also Burton v. Collins,* 937 F.2d 131, 133–34 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 642, 116 L.Ed.2d 660 (1991) (Defendant's statements were correctly interpreted as "indicat[ing] dissatisfaction with his attorney" rather than as unequivocally asserting his right to self-representation.).

■ In addition, " '[a] waiver [of the right to self-representation] may be found if it reasonably appears to the court that defendant has abandoned his initial request to represent himself.' " *Reese,* at 723 (quoting *Brown v. Wainwright,* 665 F.2d 607, 611 (Former 5th Cir.1982)). *See also United States v. Weisz,* 718 F.2d 413, 427 (D.C.Cir. 1983), *cert. denied,* 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984), and *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1305, 79 L.Ed.2d 704 (1984) (Court noted that, even though the district court granted defendant's request to represent himself, the fact that defendant permitted standby counsel to conduct his entire defense "suggest[ed] that at some point [defendant] reconsidered his decision to proceed pro se and decided to avail himself of

the assistance of counsel."); *United States v. Montgomery,* 529 F.2d 1404, 1406 (10th Cir. 1976), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976) (By allowing the public defender to conduct plea bargaining on his behalf, defendant "demonstrated that he was no longer asserting his right to represent himself."); *Hodge v. Henderson,* 761 F.Supp. 993, 1003 (S.D.N.Y.1990), *aff'd,* 929 F.2d 61 (2nd Cir.1991) ("[E]ven if [defendant's] conduct could be construed as constituting an assertion of the *Faretta* right, subsequent occurrences [i.e. neither persisting in nor reasserting of his desire to appear pro se] formed the basis of a waiver of the right."). In either case, we look to the record as a whole to determine whether the defendant desired to be represented by counsel. *See id.*[1]

■ We believe that the trial court did not err in appointing an attorney for Spencer. The intent behind the appointment, from the comments of both the court and Mock, defendant's withdrawing attorney, was to provide Spencer with "standby counsel" as envisioned in *Faretta* and *McKaskle.* The following comments were made at the hearing on attorney Mock's application to withdraw:

> THE COURT: Well, I don't think that you're [the defendant] in the position of being able to defend yourself. *And the least I would do is have somebody appointed to sit and be available as your counsel.* But, frankly, I'm not going to put the court in the position whereby you defend yourself and then it's reversed if there is a conviction, just because there was no attorney present. It's as simple as that. Now, do you have any other person in mind?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Mr. Mock, do you have any suggestions?
>
> MR. MOCK: No, Your Honor, other than I would hope the defendant understands that *if he elects to represent himself, that he could have an attorney sitting here beside him to guide him so he wouldn't go all alone, if he wishes to proceed in that manner.*
>
> . . . .
>
> THE COURT: Well, what familiarity do you have with the legal system?
>
> THE DEFENDANT: I don't have any, Your Honor. . . .
>
> . . . .
>
> THE COURT: An ordinary citizen can defend himself, but frankly an ordinary citizen is going to have a little difficulty following the procedures, making the proper objections and defending his own interests, unless he's familiar with the procedure in court. That's the problem I have. If you think you can do that, that's one thing; otherwise, what will happen is, if there is a conviction, it will be appealed and they will say *you should have had somebody here to protect your rights.*

(Emphasis added.)

The court thus properly appointed attorney McCoy over defendant's objection. If defendant had wished to treat this appointed attorney as standby counsel, he could have done so.

■ The record here, however, evinces Spencer's initial desire to be represented by counsel (in employing attorney Mock), leading us to conclude that even if he wished to proceed pro se at the time of the withdrawal hearing, he waived and abandoned that right by acquiescing to attorney McCoy's full representation of his case for the following year leading up to and during the jury trial.

■ As the court of appeals observed, Spencer's request for self-representation came out of frustration rather than a distinct and unequivocal request for that constitutional right. When Spencer was first charged in August 1990, he hired a private attorney (Richard Mock). Spencer worked with him until his motion to suppress evidence was overruled. Then, in May 1991, Mock moved

---

**1.** Although we believe the district court's inquiry was proper in this case, we point the bench and bar to a model inquiry for situations in which a defendant asserts his right to self-representation. It is found in 1 *Bench Book for United States District Judges* 1.02–2 (3d ed. 1986), as well as *United States v. McDowell,* 814 F.2d 245, 251–52 (6th Cir.), *cert. denied,* 484 U.S. 980, 108 S.Ct. 478, 98 L.Ed.2d 492 (1987).

to withdraw. Defendant was exasperated and did not want to pay for another attorney.

Yet he willingly accepted attorney McCoy's name and address from the court and clearly relied on McCoy's representation during the following year and throughout trial. Spencer never attempted to try the jury case himself with McCoy as standby counsel. He never again raised the self-representation issue in the trial court; nothing in the record indicates any assertion of this right. As the *McKaskle* Court stated, "Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence...." 465 U.S. at 183, 104 S.Ct. at 953, 79 L.Ed.2d at 136. *See also Weisz,* 718 F.2d at 427, *Montgomery,* 529 F.2d at 1406, and *Hodge,* 761 F.Supp. at 1003.

Only on appeal did defendant Spencer again raise the self-representation issue.

Finally, defendant Spencer has pointed to nothing that he would have done differently had he represented himself at trial, nor has he demonstrated any way in which attorney McCoy denied him "a fair chance to present his case in his own way." *McKaskle,* 465 U.S. at 177, 104 S.Ct. at 950, 79 L.Ed.2d at 132; *cf. United States v. Johnson,* 585 F.2d 374, 376 (8th Cir.1978) (per curiam) ("[T]here was nothing objectionable in appointing standby counsel as a precaution in case [defendant] decided at some point during the trial that he wanted counsel."), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1246, 59 L.Ed.2d 473 (1979).

III. *Conclusion.* As one court put it, the right to self-representation "place[s] trial judges between a rock and a hard place." *United States v. Berkowitz,* 927 F.2d 1376, 1383 (7th Cir.1991). We believe that the trial court's appointment of attorney McCoy to be available as standby counsel satisfied Spencer's request to represent himself but ensured that Spencer's other rights were protected as well. By his later acts Spencer waived and abandoned any right to self-representation that he may have had.

The court of appeals also affirmed the trial court's ruling that overruled defendant's motion to suppress evidence. We agree with both courts on that issue and defendant does not challenge the ruling on further review.

We therefore affirm the decision of the court of appeals and the judgment of the district court.

### DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All justices concur except LAVORATO, J., who is joined by SNELL, ANDREASEN and TERNUS, JJ.

LAVORATO, Justice (dissenting).

In a state criminal trial, a defendant has a Sixth and Fourteenth Amendment right under the federal Constitution to self-representation. *Faretta v. California,* 422 U.S. 806, 818, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562, 572 (1975). Before the right attaches, the defendant must voluntarily elect to proceed without counsel by "knowingly and intelligently" waiving his Sixth Amendment right to counsel. *Id.* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 581 (citation omitted). In addition, the defendant's request to proceed without counsel must be "clear[ ] and unequivocal[ ]." *Id.* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582. Before a trial court accepts the request, the court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582 (citation omitted).

A trial court may not bar a defendant from proceeding without counsel even though the defendant is not technically competent in the law. The defendant must only be competent to make the choice to proceed without counsel. *Id.* at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582.

Once an appellate court concludes that a defendant has been deprived of the right to self-representation, the harmless error doctrine does not apply. *McKaskle v. Wiggins,* 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 950 n. 8, 79 L.Ed.2d 122, 133 n. 8 (1984) (denial of right to self-representation not subject to harmless error analysis). This is so because unlike many other constitutional rights, this

right is not result-oriented. *Chapman v. United States,* 553 F.2d 886, 891 (5th Cir. 1977).

I easily infer from the record that Spencer is above average in intelligence. He has college training in electronics and math. His work experience included several years in the Air Force. He also worked as an electronics technician at General Dynamics for four years. He held the same position at McDonald–Douglas for four years. And for seven years he worked as a testing technician at Pacific Bell. So I think he knew what he was doing when he asked to proceed without counsel.

Ten months before trial, Spencer's attorney moved to withdraw because the attorney-client relationship had deteriorated to the point where the attorney felt he could not effectively represent Spencer. It was at the hearing on this motion that Spencer made his request to proceed without counsel.

Unlike the majority, I believe the following colloquy between the court and Spencer shows that (1) Spencer made a clear and unequivocal request—not once, but several times—to proceed without counsel, (2) his request was knowingly and intelligently made, and (3) the trial court understood Spencer was making a clear and unequivocal request to proceed without counsel:

THE COURT: The question is now, do you have confidence in him to defend you in the trial? That's the statement he's made. THE DEFENDANT: Well, I guess not, Your Honor.

THE COURT: Do you agree to his withdrawal? Do you want to get another attorney or do you want to go to trial tomorrow with him? THE DEFENDANT: I feel I would be better off defending myself, Your Honor. He doesn't want to listen to what I'm telling him.

. . . .

THE COURT: This isn't a bond hearing. This is a question as to who you're going to go to trial with as an attorney. Reurging that, the question I have is, if Mr. Mock isn't going to represent you in this trial, then who is? THE DEFEN-DANT: I'll have to go pro—I'll have to defend myself.

THE COURT: Before I would let you do that, I would appoint somebody. If your status is as it appears to be, that you have property, those will be assessed—the fees of whoever is appointed will be assessed against that. THE DEFENDANT: I don't see how you can force me to do that, Your Honor.

THE COURT: Well, I don't think that you're in the position of being able to defend yourself. And the least I would do is have somebody appointed to sit and be available as your counsel. But, frankly, I'm not going to put the court in the position whereby you defend yourself and then it's reversed if there is a conviction, just because there was no attorney present. It's as simple as that. Now, do you have any other person in mind? THE DEFENDANT: No sir.

. . . .

THE COURT: Now, you apparently want to defend yourself, but I don't know what qualifications you have to defend yourself, so I think it's appropriate that an attorney be appointed if Mr. Mock is to withdraw. Now, my question is, do you want to go find somebody else or do you want me to appoint somebody? THE DEFENDANT: I don't want to find a lawyer.

THE COURT: What? THE DEFENDANT: I don't want to find another lawyer.

THE COURT: In other words, you want me to appoint somebody? THE DEFENDANT: I've already expressed an opinion I would rather do it myself.

THE COURT: Well, what familiarity do you have with the legal system? THE DEFENDANT: I don't have any, Your Honor. Shouldn't make the legal system that way where I can't defend myself. I'm the one that's familiar with the case. I'm the one that's arrested. I know what my best interest is.

THE COURT: Well, if I understand your complaint, you want somebody that will go in—and you're complaining that Mr. Mock—I'm not saying it's true—that he wanted to plead it and you wanted to

fight it. Now, the question is, how are you going to fight it in the courtroom? My problem with it is that I don't want you to sit in the courtroom not being prepared for the procedures and end up with a verdict against you because you weren't familiar with the procedures. Do you understand what I'm saying? THE DEFENDANT: I understand what you're saying, but I don't understand why you make them that way.

THE COURT: Why do we make what that way? THE DEFENDANT: Court procedures that way. Ordinary citizen can't come in and defend himself.

THE COURT: An ordinary citizen can defend himself, but frankly an ordinary citizen is going to have a little difficulty following the procedures, making the proper objections and defending his own interests, unless he's familiar with the procedure in court. That's the problem I have. If you think you can do that, that's one thing; otherwise, what will happen is, if there is a conviction, it will be appealed and they will say you should have had somebody here to protect your rights.

. . . .

THE COURT: Okay. During the interim, the court has attempted to contact an attorney to represent the defendant in this case. I have contacted Richard McCoy in Sioux City. He practices in criminal court and he's had a lot of cases and he's tried a lot of cases and I feel that he's a good attorney. He's indicated that he would be willing to take your case and he has an office in the Badgerow Building in Sioux City. Do you know where that is? THE DEFENDANT: No, sir.

THE COURT: That's at Fourth and Jackson Streets. He's in his office all day today and he would be willing to see you. Does that meet with your approval? THE DEFENDANT: Doesn't meet with my approval, Your Honor, but if you're going to force it on me, I'm going to have to take it.

THE COURT: I have also indicated to him I can appreciate he wouldn't be ready for trial. The next trial date is July 9, so I'm going to continue the trial to 9:30 a.m. July 9. THE DEFENDANT: It's been almost a year now, Your Honor. I would like to get this over with.

THE COURT: I can appreciate that, but he's going to need some time to prepare for trial. If you and he think you can go to trial before July 9, you have him get ahold of me and I'll see about getting a jury in here before that. That's not very far off. And he's a very busy lawyer and he may have other cases scheduled in between. I have selected somebody that I believe is a good criminal trial lawyer. I don't know how I can do any better for you. And on that basis that he accepts the appointment, Mr. Mock, I'll permit you to withdraw.

. . . .

PROSECUTOR: I understand, Your Honor. The appointment of Mr. McCoy is pursuant to [section] 815.10(2) then? THE COURT: That's right. And I can appreciate that it says, ". . . if a person desires legal assistance and is not indigent." As far as I'm concerned, although he indicates he wants to do it himself, I don't see that he's competent and qualified to do it himself. There should be somebody there. And on that basis, [the] court interprets that section to apply.

The majority attempts to finesse Spencer's clear and unequivocal pleas to represent himself by relying on a "frustration" explanation plucked out of *Reese v. State*, 391 N.W.2d 719 (Iowa App.1986). The majority's reliance on *Reese* is clearly misplaced. In *Reese*, the only mention of self-representation came in response to the trial court's denial of the defendant's request for substitute counsel of his choice. And that response was simply a mumbled, "Well, I don't want no counsel then." *Id.* at 722. Our court of appeals quite properly recognized this response as simply an expression of frustration to the trial court's denial of the defendant's request for substitute counsel of his choice. *Id.* at 724.

In contrast, Spencer's requests were not made in response to the trial court's denial of substitute counsel. His counsel was withdrawing and that is precisely what Spencer desired. Spencer wanted to defend himself and he clearly said so.

And the trial court understood that Spencer wanted to defend himself. This is readily apparent from this comment:

> THE COURT: Now, *you apparently want to defend yourself,* but I don't know what qualifications you have to defend yourself. . . .

(Emphasis added.)

Spencer captured the essence of *Faretta* when he insisted that we "shouldn't make the legal system that way where I can't defend myself. I'm the one that's familiar with the case. I'm the one that's arrested. I know what my best interest is." On this point, *Faretta* eloquently says:

> It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may čonduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Faretta,* 422 U.S. at 834, 95 S.Ct. at 2540–41, 45 L.Ed.2d at 581 (citation omitted).

The majority also attempts to finesse the trial court's denial of Spencer's request to defend himself by simply characterizing the court's actions as appointment of standby counsel. The trial court did not appoint standby counsel; the trial court simply denied Spencer's request to defend himself by forcing appointed counsel on him. That is readily apparent from the following comments:

> THE COURT: Now, you apparently want to defend yourself, but *I don't know what qualifications you have to defend yourself, so I think it's appropriate that an attorney be appointed if Mr. Mock is to withdraw.*

(Emphasis added.)

The role of standby counsel is limited to assisting a pro se defendant when such defendant *wants* assistance. A pro se defendant has the right to control the case the defendant chooses to present to the jury. That means a trial court must permit the pro se defendant to control the organization and content of the defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and jury at appropriate points in the trial. Anything less constitutes a denial of the pro se defendant's right to self-representation.

If the trial court permits standby counsel to participate in the defense over the defendant's objections, such participation effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control questioning of witnesses, or to speak instead of the defendant on any matter of importance. Such interference is a denial of the pro se defendant's right to self-representation.

The primary focus in determining whether the right to self-representation has been respected is whether the defendant had a fair chance to present the case in the defendant's own way. In short, participation by standby counsel should not be allowed to destroy a jury's perception that a defendant is representing himself or herself.

These stringent limitations were recently spelled out in *McKaskle v. Wiggins,* 465 U.S. 168, 178, 104 S.Ct. 944, 951, 79 L.Ed.2d 122, 133 (1984), the first case in which the Supreme Court has described the role of standby counsel.

Because the role of standby counsel is severely restricted, trial courts contemplating appointment of standby counsel should—

at a minimum—explain the limitations I have sketched out above from *McKaskle*. The reason is obvious: if the right to self-representation is to mean anything, a defendant who is appointed standby counsel should know how far the defendant can go in defending himself or herself without interference.

Here the trial court should have granted Spencer's request to defend himself. If the court was still concerned, the court should have then explicitly told Spencer he was appointing standby counsel and should have explained the limitations on standby counsel's role. Although above average in intelligence, Spencer is still a layperson untrained in the intricacies of criminal law. In these circumstances we cannot expect a layperson to understand the concept of standby counsel and the limitations on counsel's role unless the layperson is told.

After the colloquy between the court and himself, Spencer could only have had one thought: appointed counsel was being forced upon him and he was not going to be allowed to defend himself. This too is readily apparent in this exchange between the court and Spencer:

> THE COURT: Does that meet with your approval [appointment of counsel]?
> THE DEFENDANT: Doesn't meet with my approval, Your Honor, but if you're going to force it on me, I'm going to have to take it.

The majority's statement that Spencer could have "treat[ed his] appointed attorney as standby counsel" assumes he knew all about the concept of standby counsel. The record does not support this assumption, because the trial court did not advise Spencer about the concept of standby counsel.

The majority has two fallback positions: waiver and lack of prejudice.

There are two bases to the majority's waiver analysis. Waiver occurred—says the majority—because Spencer (1) did not clearly and unequivocally assert his right to self-representation, but did so out of frustration, and (2) abandoned his initial request to represent himself in acquiescing to McCoy's representation for the following year and during the trial. Because—as I have shown—Spencer clearly and unequivocally asserted his right to self-representation, there was no waiver on this ground.

Waiver is relinquishment of a known right. *United States v. Olano*, 507 U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508, 519 (1993) (citation omitted). The trial court made it abundantly clear to Spencer that he was not going to represent himself. In the face of this statement, the average citizen with no legal background could only surmise that he or she had no constitutional right to proceed without counsel. How, then, could Spencer waive a right he did not know he had? Any acquiescence on Spencer's part in McCoy's representation resulted not from any voluntary conduct, but from the trial court's refusal to permit Spencer to proceed without counsel.

In *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir.1989), the federal trial court found waiver for two reasons. First, the defendant never repeated his request. Second, the defendant permitted appointed counsel to represent him without demonstrating displeasure with such counsel. This reasoning is similar to the majority's reasoning here. Rejecting such reasoning and finding error, the federal appellate court said:

> Petitioner's request to represent himself was denied. By failing to repeat his desire to represent himself, petitioner did not vacillate on the issue. He did not abandon his initial request, either. [The petitioner] is unlike the [applicant] in *Brown [v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982) ], who, before the court even denied his motion for self-representation, asked counsel to represent him. [Here the petitioner] acquiesced in being represented by counsel because his request to defend himself had already been denied. To avoid a waiver of a previously-invoked right to self-representation, a defendant is not required continually to renew a request once it is conclusively denied or to "make fruitless motions or forego cooperation with defense counsel in order to preserve the issue on appeal." Moreover, in *Brown*, defense counsel represented to the court that he and defendant had resolved their

differences. Here, the court's finding of a subsequent waiver by defendant is unsupported by such conduct and statements of the defendant and counsel.... [The petitioner] had no reason to repeat his initial request; it was denied, not granted.... Nothing in the record indicates that petitioner ever abandoned by conduct or otherwise his initial request to represent himself.

*Id.* at 1512–13 (citations omitted). This reasoning of the appellate court is equally applicable here. Spencer had no reason to repeat his initial request; it was denied, not granted. Moreover, I find nothing in the record that indicates Spencer ever abandoned his initial request to represent himself.

The Supreme Court has left no doubt that waiver of constitutional rights in any context must be voluntary, knowing, and intelligent with sufficient awareness of the relevant circumstances and likely consequences. *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 756 (1970). So courts "indulge every reasonable presumption against waiver" of such rights and "do not presume acquiescence" in the loss of such rights. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938) (citations. omitted). The majority turns this rule on its head and presumes from a silent record that Spencer acquiesced in the loss of his fundamental right to proceed without counsel.

With these clear Supreme Court pronouncements, I think we should hold that, following an unequivocal demand of self-representation, a defendant does not waive the right to proceed without counsel until there is a dialogue between the judge and the defendant at a hearing showing a voluntary, knowing, and intelligent waiver. Absent such a hearing and dialogue, there is no way to determine if the defendant has willingly chosen the assistance of counsel contrary to the defendant's prior expressed request. No such hearing or dialogue was had here, another reason undercutting the majority's finding of waiver.

Moreover, contrary to the majority's assertion, Spencer did not willingly accept McCoy's name and address. Spencer specifically said McCoy was being forced upon him.

The majority makes much out of the fact that Spencer never attempted to try the jury case with McCoy as standby counsel. On this point the majority cites the following statement out of *McKaskle:* "Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence." *McKaskle,* 465 U.S. at 183, 104 S.Ct. at 953, 79 L.Ed.2d at 136. All this *assumes* that McCoy was standby counsel. I think the dialogue between the trial court and Spencer makes it clear that the trial court appointed Spencer counsel, not standby counsel, and that is precisely what Spencer thought the court was doing.

The majority also makes much of the fact that Spencer pointed to nothing that he would have done differently as his own counsel at trial or any manner in which McCoy denied him a fair chance to present his case in his own way. This is a prejudice argument, an argument that is not appropriate when the issue is denial of a request to proceed without counsel.

As I said earlier, denial of the constitutional right to proceed without counsel is not result-oriented. So a harmless error analysis is inappropriate when there has been a denial of such a right. A lack of prejudice analysis is akin to a harmless error analysis: both are result-oriented. It is inappropriate to apply either to a denial of the right to proceed without counsel. Either the trial court denied Spencer his constitutional right to proceed without counsel or it did not. In the case of the former Spencer is entitled to a new trial without regard to a harmless error or lack of prejudice analysis.

At English common law the insistence upon a right of self-representation was the rule, rather than the exception. *Faretta,* 422 U.S. at 823, 95 S.Ct. at 2535, 45 L.Ed.2d at 575. It is ironic that in the long history of British criminal jurisprudence there was only one tribunal that ever adopted the practice of forcing counsel upon an unwilling criminal defendant. That tribunal was the Star Chamber, a tribunal that for centuries sym-

bolized the disregard of basic human rights. *Id.* at 821, 95 S.Ct. at 2534, 45 L.Ed.2d at 574. And the insistence upon a right to self-representation was, if anything, more fervent in the American colonies than at English common law. *Id.* at 826, 95 S.Ct. at 2537, 45 L.Ed.2d at 576–77.

As *Faretta* points out,

it is one thing to hold that every defendant, rich or poor, has the right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want. The value of state-appointed counsel was not unappreciated by the Founders, yet the notion of compulsory counsel was utterly foreign to them. And whatever else may be said of those who wrote the Bill of Rights, surely there can be no doubt that they understood the inestimable worth of free choice.

*Id.* at 833–34, 95 S.Ct. at 2540, 45 L.Ed.2d at 580–81.

In sum, I would hold that the trial court denied Spencer the right to represent himself. I would therefore reverse and remand for a new trial.

SNELL, ANDREASEN, and TERNUS, JJ., join this dissent.